# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyra W. Collins, :
                    Petitioner :
                                  :
          v.                      :    No. 2330 C.D. 2014
                                  :    SUBMITTED:  June 26, 2015
Unemployment Compensation         :
Board of Review,                  :
                    Respondent    :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                    **FILED:  November 3, 2015**

Tyra W. Collins (Claimant) petitions for review of the order of the Unemployment Compensation Board of Review (Board) that denied her unemployment compensation benefits.  The Board determined that Claimant's use of profane language to describe her coworker to another coworker in the common area of the workplace constituted willful misconduct and that she was, therefore, ineligible to receive benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

Claimant was employed by Healthcare Services (Employer) as a full-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) provides, in pertinent part, that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work  …."

time housekeeper from October 2009 until she was discharged on March 30, 2014. The Office of UC Benefits determined that she was ineligible for benefits under Section 402(e) of the Law because her use of profanity at a nursing care facility where she worked constituted willful misconduct. After a hearing, at which Claimant, represented by counsel, and Employer's witnesses appeared and testified, the referee affirmed the Office of UC Benefits' determination and denied Claimant benefits. On appeal, the Board remanded the matter to the referee to hold another hearing, acting as the Board's hearing officer, to take additional testimony on the following questions:

> 1. If the employer was aware of profanity in the workplace, why was no action taken to address the behavior?
>
> 2. Has the employer fired any other employees for using profanity?
>
> 3. Did the employer discipline Mr. Nix [Claimant's coworker] for using profanity?
>
> > a. If not, why not?

Board's August 5, 2014 Remand Memo; Certified Record (C.R.), Item No. 13.

The Board's findings made after a remand hearing and the undisputed evidence in the record reveal the following events leading to the termination of Claimant's employment. Profane language was commonly used at Employer's workplace. Employer generally tolerated the use of profanity by employees and those in management and did not routinely discipline them for using such language, unless it occurred "in common areas." Board's Finding of Fact No. 5. In January 2013, Claimant received a written warning and a three-day suspension for using language containing sexual comments about a coworker. She was warned that "if this happens again[,] you will be terminated on the spot …." Employee Warning Notice; C.R., Item No. 3. Claimant's coworker, Willie Nix, testified that

2

during a conversation with him on March 23, 2004, Claimant called another coworker "[p]ussy," "[b]itch" and "faggot." May 12, 2004 Hearing, Notes of Testimony (N.T.) at 16. A resident's family member heard Claimant's comments while passing through the hallway, and Employer thereafter received complaints about Claimant's comments. After an investigation of the incident, Employer discharged Claimant for using profane and harassing language at the workplace. Nix was not involved in any improper conduct.

Employer's discrimination/harassment policy contained in Employees' Handbook stated that "[a]ny form of harassment on the basis of race, color, religion, sex, national origin, age, disability, or any other protected status will not be tolerated." C.R., Item No. 3. Employees were also "required to maintain a neat appearance and a professional and cooperative attitude on the job." Employer's Rules and Regulations No. 15; C.R., Item No. 3. Employer had "complete discretion" to decide appropriate discipline to be imposed on employees. Employer's Rules and Regulations; C.R., Item No. 3. The Board concluded that Claimant's use of profane language to describe her coworker, despite the prior warning, in the area of the facility where the resident's family member could hear her was below the standards that Employer had a right to expect, rendering her ineligible for benefits under Section 402(e) of the Law. Claimant's appeal to this Court followed.[2]

---

[2] In an unemployment compensation case, the Board is the ultimate fact-finder and is empowered to make credibility determination. *Russo v. Unemployment Comp. Bd. of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010). In reviewing the Board's decision, this Court must examine the evidence in the light most favorable to the party in whose favor the Board has found, Employer in this matter, giving that party the benefit of all inferences that can logically and reasonably be drawn from the evidence. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977).

3

Claimant argues that she cannot be considered to have committed willful misconduct because Employer failed to establish the existence of the reasonable rule prohibiting the use of profane language.  In so arguing, Claimant concedes that her language was "coarse" and that "Employer may very well have had grounds to discharge [her] for her use of profanity under the two suggested policies" against the use of discriminatory and harassing language and requiring professionalism.  Claimant's Brief at 18.

An employer contesting a claimant's eligibility for benefits under Section 402(e) of the Law has the initial burden of proving that the claimant engaged in willful misconduct.[3]  *Patla v. Unemployment Comp. Bd. of Review*, 962 A.2d 724, 727 (Pa. Cmwlth. 2008).  Once the employer establishes a *prima facie* case of willful misconduct, the burden then shifts to the claimant to demonstrate good cause for his or her conduct.  *Id.*  Whether the claimant's conduct rose to the level of willful misconduct is a question of law subject to our plenary review.  *Dep't of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011, 1015 (Pa. Cmwlth. 2008).

Where a charge of willful misconduct is based on a violation of a work rule, the employer must prove the existence of the rule, the reasonableness of the rule and its violation.  *Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159, 1162 (Pa. Cmwlth. 2013).  Where an employer has adopted a policy against the use of obscene or abusive language to other employees or customers, a

---

[3] The term "willful misconduct" has been defined as: (1) the wanton and willful disregard of the employer's interests; (2) the deliberate violation of rules; (3) the disregard of standards of behavior which an employer can rightfully expect of its employee; or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review*, 957 A.2d 786, 792 (Pa. Cmwlth. 2008).

violation of that policy may constitute willful misconduct. *Brown v. Unemployment Comp. Bd. of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012).

Under Employer's policy, the employees were required to have "a professional and cooperative attitude on the job." As Claimant concedes, her use of profane language to describe her coworker to another coworker in the common area of the facility may have violated that policy and supported her discharge. Moreover, the fact that Employer did not have a work rule expressly prohibiting a use of profanity is not critical in deciding whether Claimant committed willful misconduct. It is well established that the existence of a specific rule or policy is not necessary to decide whether the claimant's conduct rose to the level of willful misconduct, "where the employer has a right to expect a certain standard of behavior, that standard is obvious to the employee, the employee's conduct is so inimical to the employer's interests that discharge is a natural result." *Ellis*, 59 A.3d at 1162. Moreover, Claimant was made aware by her previous warning that her use of profane language violated the policy.

Employer's account manager, Sherri Sweigart, testified that Employer provided services to the nursing care facility for the elderly under a contract. While acknowledging that profane language was commonly used at the facility, she explained her decision to discharge Claimant:

> It wasn't a decision that I wanted to make. It was a decision I had to make. We're contracted. When the higher up people hear that their contracted service is disgruntling family members and residents are in the middle, …who has to fix that, it's me. I wasn't left any choices. … We can be who we need to be in a janitor's closet or in a break room, off away from family members and residents, but in this case that's not what happened. And in this case I had to do what I had to do for our contract sake and for 30 other employees['] job sake.

5

May 12, 2014 Hearing, N.T. at 24; C.R., Item No. 9. The record establishes that Claimant's use of profanity in the common area was inimical to Employer's interests and below the standard of behavior that it could rightfully expect of her.

Claimant asserts that even the supervisors sometimes used profanity and that Employer failed to consistently enforce the work rule. She argues that because the employees were not routinely disciplined for using profanity, she reasonably believed that she could use profanity and would not be disciplined.

The record does not support Claimant's suggestion that she was subject to "disparate treatment." Disparate treatment is an affirmative defense by which a claimant who committed willful misconduct may still receive benefits, if (1) an employer discharged the claimant, but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the claimant based upon an improper criterion. *Geisinger Health Plan v. Unemployment Comp. Bd. of Review*, 964 A.2d 970, 974 (Pa. Cmwlth. 2009). Claimant was not similarly situated to other employees and was discharged based on a proper criterion. Claimant was previously disciplined for making an improper comment about her coworker and was warned that she would be immediately discharged on the spot for another use of such language. She again used the profane language in the common area where the resident's family member could hear it. Employer received complaints about her conduct. The record does not support her affirmative defense of disparate treatment.

Nor does this Court's holding in *Brown*, relied on by Claimant, support her position. In *Brown*, the claimant worked in a large 77,000-square-foot warehouse with 605 employees. He was discharged for using the word "moron" on

6

the battery sign placed to prevent his coworkers from using an inoperable battery, which could be dangerous. The evidence showed that his supervisor called the claimant "jackass." The majority in *Brown* concluded that the claimant's use of the word "moron" did not rise to the level of willful misconduct. In deciding whether the use of profane language constitutes willful misconduct, the reasonable standards expected by the particular employer must be considered. *Woodson v. Unemployment Comp. Bd. of Review*, 336 A.2d 867, 868 (Pa. 1975); *Brown*, 49 A.3d at 938. Unlike in *Brown*, in which the claimant worked in a large and busy warehouse, Claimant worked in the residential nursing care facility for the elderly, was previously disciplined for using profane language, and was warned that she would be immediately discharged for such behavior. She disregarded the standards of behavior which Employer could rightfully expect of her by again using profanity in the area where the resident's family members could hear it. Claimant's conduct constituted willful misconduct.

Accordingly, the Board's order is affirmed.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

7

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tyra W. Collins, :
                    Petitioner :
                              :
              v.              :     No. 2330 C.D. 2014
                              :
Unemployment Compensation     :
Board of Review,              :
                    Respondent :

# **O R D E R**

AND NOW, this 3rd day of November, 2015, the order of the Unemployment Compensation Board of Review in the above-captioned case is AFFIRMED.

 

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge